UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM ROSEMOND,<br><br>    Petitioner,<br><br>    v.<br><br>JEFFREY A. BEARD,<br><br>    Respondent. | Case No.: 1:14-cv-00490 AWI  JLT  (HC)<br><br>FINDINGS AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>OBJECTIONS MAY BE FILED WITHIN 21 DAYS |

       In 2011, Petitioner was convicted of shooting at an occupied vehicle and six counts of assault with a firearm. He was sentenced to an indeterminate sentence of 32 years-to-life. In this action, he contends the trial court erred when it found him competent to stand trial. Because the Court does not find the state court erred when finding Petitioner was competent at the time of trial and the trial court was entitled to impose the upper term when it sentenced him, the Court recommends the petition for writ of habeas corpus be **DENIED**.

I.    **FACTUAL BACKGROUND**

       The Court adopts the Statement of Facts in the 5th DCA's published/unpublished decision[1]:

> On September 29, 2009, Rosemond was assaulted by at least four men, including Eugene and Harry Marshall, while he was waiting at a bus stop near his grandmother's house for a bus to his mother's house. Eugene and Harry participated in the attack on Rosemond by holding him to the ground and hitting him in the head with a brick. Responding officers felt Rosemond's injuries

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

were sufficiently severe to require an ambulance. Eugene was arrested in connection with the attack; Harry was not. The police recommended the district attorney file charges against Eugene for the assault and for violating a court-ordered gang injunction. The record does not indicate whether Eugene or Harry was prosecuted in connection with the attack.

On September 12, 2010, Lashonda Marshall was driving to her mother's house when she saw her brother, Harry, and one of the other men involved in the attack on Rosemond in 2009. Lashonda saw Rosemond walking on the street toward her brother; she thought there would be trouble. Lashonda stopped her car and waited. Rosemond and Harry had a staring match and possibly exchanged words, after which Harry got into his car and drove off, following Lashonda's car.

As Lashonda was driving away, with her boyfriend and three children in the car, a bullet penetrated the trunk and rear seat of her vehicle. The bullet struck her seven-year-old daughter, Sierra, in the arm and then passed through the front seat, striking Sierra's father, James Timmons, in the back.

Lashonda told police she saw Rosemond standing by a tree pointing a gun at the street as she drove past; she saw no one else in the area. As Lashonda quickly pushed on the gas pedal to drive away, she heard gunshots. Sierra claimed she saw the man running after firing the gun at their car. Both Lashonda and Sierra identified Rosemond from a photographic lineup.

Gunfire is common in that neighborhood, formally named Brookhaven, but called the "Dog Pound" after a gang. Rosemond did not live in the area, but his grandmother's house was in Brookhaven. Lashonda knew Rosemond's mother but did not know Rosemond personally. Lashonda claimed she knew Rosemond by the monikor "Pooka" and she had seen him walking with members of the Dog Pound gang. A Fresno police officer assigned to the multiagency gang enforcement consortium testified he had had multiple prior contacts with members of the Marshall family in connection with gang activity; he did not cite any gang contacts with Rosemond.

Police never were able to determine the caliber of the bullet that struck Lashonda's car. Police searched Rosemond's home at the time of his arrest but found no bullets, weapon, or other evidence connecting him to the shooting.

Rosemond was charged with shooting at an occupied vehicle, in violation of Penal Code section 246,1 and six counts of assault with a firearm, in violation of section 245, subdivision (a)(2). It also was alleged that Rosemond personally and intentionally discharged a firearm, causing great bodily injury, and that he personally used a firearm.

On November 29, 2010, Rosemond's defense counsel declared a doubt as to Rosemond's competency to stand trial. Defense counsel asked the trial court to suspend proceedings and appoint doctors to evaluate Rosemond; the prosecution joined in the request. The trial court found there was a sufficient basis upon which to declare a doubt as to Rosemond's competency, suspended criminal proceedings, and appointed Doctors Harold L. Seymour and Luis H. Velosa to evaluate Rosemond pursuant to section 1369.

Velosa found Rosemond to have been a "slow learner," but found no evidence of any psychiatric disorder that would impair Rosemond's concept of reality. Velosa concluded Rosemond was able to "understand the nature and purpose of the proceedings" and was capable of cooperating with defense counsel.

Seymour found Rosemond to have "mood, substance abuse, and cognitive difficulties." Seymour concluded Rosemond was not competent to stand trial because he "lacks sufficient knowledge to competently assist his legal counsel, and he is suspicious of his attorney's motives."

On January 10, 2011, the trial court noted the conflicting opinions of Velosa and Seymour. Defense counsel asked for the appointment of a third doctor to evaluate Rosemond; the prosecutor suggested the appointment of two additional doctors, and the defense did not object. The trial court appointed Doctors Robert C. Taylor and Richard Kendall to examine Rosemond.

Kendall opined that during his examination, Rosemond "attempted to feign (in an unsophisticated manner) psychotic impairment." Kendall found "no credible evidence that [Rosemond] has any psychiatric impairment which would prevent him from being able to stand trial."

Taylor found Rosemond to be "a cognitively limited, emotionally immature and uncooperative young man." Taylor noted Rosemond had a "lengthy history of being treated for attention deficit/hyperactivity and depressive issues." Taylor opined that "if [Rosemond] chooses to cooperate," he would have "the capacity to understand the nature of the criminal proceedings and be able to assist counsel in the conduct of his defense in a rational manner." Taylor concluded Rosemond's uncooperative behavior was "a manifestation of oppositional and defiant attitudes, cognitive limitations and an awkward attempt, at times, to malinger rather than the product of a psychotic or mentally retarded individual."

On March 22, 2011, the parties submitted the issue of competency to stand trial on the doctors' reports. The trial court found Rosemond competent to stand trial and reinstated criminal proceedings.

On June 16, 2011, Rosemond indicated he wanted to proceed to trial, although the trial court had urged the parties to discuss and consider a plea agreement. The trial court then asked defense counsel, "I'm assuming, counsel, whether you agree or not with his decision, you are satisfied he understands what's going on here and knows what he's got at risk?" Defense counsel responded, "I believe so, Your Honor."

A jury was empanelled on June 16, 2011, and trial commenced. At trial, Rosemond presented character witnesses. A staff person at the high school from which Rosemond graduated described him as "always polite and nice." Rosemond's mentor in the Big Brothers/Big Sisters program described Rosemond as nonviolent, polite, respectful, and mild mannered.

On June 22, 2011, the jury convicted Rosemond of all counts and found all enhancements true. On September 14, 2011, the trial court sentenced Rosemond to a term of 32 years to life.

(Doc. 16)

**II.    DISCUSSION**

    I.    <u>Jurisdiction</u>

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II. Legal Standard of Review

The Court may not grant a petition for writ of habeas corpus under 28 U.S.C. § 2254(d) unless the petitioner shows that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

### III. Review of Petitioner's Claim

Petitioner claims the trial court violated Petitioner's right to federal due process when it found him competent to stand trial and when it imposed the upper term as to the conviction for shooting at an occupied vehicle.

    A. Petitioner's competency to stand trial

        1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

**I. Mental Competency**

*Definition of Incompetency*
The trial court must order a competency hearing whenever it becomes aware of substantial evidence sufficient to create a reasonable doubt about whether a defendant is mentally competent to stand trial. (*People v. Castro* (2000) 78 Cal.App.4th 1402, 1415 (*Castro* ).) Mental incompetence may be the result of a mental disorder or developmental disability, or both. (*Id*. at pp. 1413, 1414.) A defendant is presumed to be mentally competent unless, by a preponderance

5

of the evidence, it is proved that he or she is incompetent. (§ 1369, subd. (f); *Medina v. California* (1992) 505 U.S. 437, 448–453 (*Medina* ).) Section 1367, subdivision (a) defines mental competency as:

> "A person cannot be tried or adjudged to punishment while that person is mentally incompetent. A defendant is mentally incompetent for purposes of this chapter if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner."

In *Medina*, the United States Supreme Court held that California's statutory scheme of placing the burden of proving incompetency on a defendant by a preponderance of the evidence did not violate a defendant's due process rights. (*Medina*, *supra*, 505 U.S. at pp. 448–452.)

The standard articulated by the United States Supreme Court for assessing whether a person is competent to stand trial is " 'whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' " (*Dusky v. United States* (1960) 362 U.S. 402; see also *Drope v. Missouri* (1975) 420 U.S. 162, 171.)

In *People v. Jablonski* (2006) 37 Cal.4th 774, 808, the California Supreme Court determined " ' "To anyone but a hairsplitting semanticist, the two tests [California and federal] are identical" ' " and the state standard comports with federal due process requirements. (See also *People v. Young* (2005) 34 Cal.4th 1149, 1216; *People v. Koontz* (2002) 27 Cal.4th 1041, 1063.)

Thus, Rosemond's argument that California's statutory definition is too narrow necessarily fails as the California Supreme Court has determined that the standard for determining competency to stand trial is the same under the federal and state standards and complies with due process.

***Sufficiency of the Evidence***

On appeal, a finding on the issue of a defendant's competence to stand trial "cannot be disturbed if there is any substantial and credible evidence in the record to support the finding. [Citation.]" (*Castro*, *supra*, 78 Cal.App.4th at p. 1418.) We view the evidence in the light most favorable to the verdict to determine if it supports the trial court's finding. (*People v. Marshall* (1997) 15 Cal.4th 1, 31.) " 'Evidence is substantial if it is reasonable, credible and of solid value.' [Citation.]" (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) " 'In addition, a reviewing court generally gives great deference to a trial court's decision' " on the defendant's competence to stand trial. (*People v. Kaplan* (2007) 149 Cal.App.4th 372, 383, quoting *Marshall*, at p. 33.)

Rosemond asserts that due to his attention deficit disorder (ADD), depression, and low average or below average intelligence, he was incapable of meaningful consultation with defense counsel or of assisting in his own defense. We disagree.

Four doctors evaluated Rosemond and three provided more than sufficient evidence that he was competent to stand trial.

The record establishes that Rosemond did not suffer from a mental illness or developmental disability that precluded him from cooperating with counsel and assisting in his own defense. Rosemond graduated from Cambridge High School and enrolled in Fresno City College but dropped out his first semester. Although he suffered from ADD, he was on medication as a child and young adult to address the symptoms of ADD. After his arrest, he was diagnosed with "depressed mood" and was prescribed antidepressant medication. Evidence of a mental illness and use of medication does not mean a defendant is unable to understand the proceedings and assist in a defense. (*People v. Smith* (2003) 110 Cal.App.4th 492, 502.)

> When interviewed, Rosemond's thinking process was linear, his thought content was rational, and his attention and concentration were within normal limits. He was capable of explaining why he had been arrested and articulating concerns regarding his identification as the perpetrator in the line-up and the notification of his constitutional rights. Rosemond was described as having "low average intelligence." Low intelligence and learning disabilities do not necessarily equate to incompetence to stand trial. (*Walton v. Angelone* (4th Cir.2003) 321 F.3d 442, 460.)
>
> Rosemond was found to have the "capacity to function in a rational manner." He understood the nature and severity of the charges against him, the difference between a felony and misdemeanor, the nature of pleas and their consequences, the right to remain silent, and the role of various court room officials. He did not have any paranoid ideation, delusions, or thought disorganization that would impair his ability to assist his attorney in a rational manner.
>
> Rosemond was found to be uncooperative, difficult, and unpleasant in interactions. Three doctors concluded Rosemond had the capacity to understand the nature of the criminal proceedings against him, and, if he chooses to cooperate, would be able to assist defense counsel in a rational manner. The test for competency is not actual cooperation, but the ability to cooperate. (*People v. Superior Court (Campbell)* (1975) 51 Cal.App.3d 459, 464.)
>
> Substantial evidence established that ADD, depressive mood, any learning disability, or low average intelligence did not prevent Rosemond from understanding the proceedings and assisting in his own defense. The trial court did not err in finding Rosemond competent to stand trial.

(LD 4, pp. 2-6).

### 2. Analysis

The conviction of a legally incompetent defendant violates due process. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). The state court properly identified the federal standard in this regard. Notably, to prevail on a substantive due process claim that a defendant was incompetent during trial, the petitioner must show that "at the time of trial he lacked either sufficient ability to consult with his lawyer with a reasonable degree of rational understanding, or a rational and factual understanding of the proceedings against him." See Williams v. Woodford, 384 F.3d at 608 (citing Dusky v. United States, 362 U.S. 402, 402 (1960)).

The state court's factual findings here are subject to deference in these proceedings.[2] See Davis v. Woodford, 384 F.3d 628, 644 (9th Cir.2003) (stating it would defer to the state courts' decisions not to order a competency hearing "unless they are 'unreasonable' within the meaning of 28 U.S.C. § 2254(d)(2)"); Waller v. Wofford, 2012 WL 5870762 at *3 (C.D.Cal. Nov.19, 2012). When a habeas petitioner alleges a state court made a unreasonable determination of fact under § 2254(d)(2), the

---

[2] Petitioner does not contend there is evidence outside of the record, which addresses his competency to stand trial.

7

federal habeas court "must be particularly deferential to [its] state-court colleagues" on their determinations of fact. Taylor v. Maddox, 366 F.3d 992, 999–1000 (9th Cir. 2004). The federal district court "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." Id. at 999.

"Challenges under § 2254(d)(2) fall into two main categories. First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." Hibbler v. Benedetti, 693 F.3d 1140, 1146 (9th Cir.2012) (relying on Taylor, 366 F.3d at 999–1001).

Notably, here, Petitioner does not claim that the process by which the court found him competent was defective. Indeed, Petitioner was evaluated by four mental health professionals and concluded he was competent to stand trial. Rather, he claims the trial court made the wrong determination. However, the evidence before the trial court was sufficient to support the findings of the court. As noted by the 5th DCA, despite his low-intelligence, his thinking was linear and rational, he understood the nature of the charges and could explain them, he had normal attention and concentration and was able to explain why he believed the photo line-up was constitutionally infirm. In addition, the evidence demonstrated that Petitioner attempted to skew the evaluations to overstate his mental/emotional problems. When he was reminded that he must do his best on tests, he then was able to do quite well. This demonstrates an ability to cooperate when he chose. Finally, as Respondent notes, Petitioner's low intelligence, ADD or depression is not equivalent to incompetency. "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000), citing Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir.1995); United States v. Frank, 956 F.2d 872, 875 (9th Cir. 1991), as amended on denial of reh'g (Feb. 11, 1992) [Defendant properly found to be competent despite evidence of "major depression, mental retardation, [and] borderline intelligence."]

Moreover, the trial court was in a position to observe and assess Petitioner's behavior and to communicate with him during the course of pre-trial and trial proceedings, and would have been in a position to observe any visible or discernable changes in his mental state. See Moran v. Godinez, 57

F.3d 690, 695 (9th Cir. 1995). Notably, as Petitioner admits, the trial court inquired of Petitioner whether he understood the risks involved in having a trial—as opposed to taking a plea deal—and Petitioner was able to respond and to do so appropriately. (Doc. 1 at 13)

Given the medical expert testimony regarding Petitioner's was significant, the Court cannot conclude that the state court's findings of fact were wrong or, more importantly, unreasonable. Taylor v. Maddox, 366 F.3d at 999. Accordingly, the state court's adjudication and its fact-finding were not objectively unreasonable and the petitioner claim must be rejected.

B. Imposing the upper term

   1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's claim as follows:

> **II. Sentencing Issues**
>
> Rosemond contends his sentence to the upper term on count 1 must be set aside because (1) the trial court did not understand its discretion, and (2) the trial court improperly relied on "unintended assault convictions" as an aggravating factor . . .
>
> *Factual Summary*
>
> The probation report stated that the aggravating and mitigating factors were "balanced" and recommended the midterm of five years be imposed on count 1. The probation officer found as an aggravating factor that Rosemond had engaged in "violent conduct [that] indicates a serious danger to society." As a mitigating factor, the probation officer found that Rosemond had no prior record or an insignificant prior record. The ultimate recommendation of the probation department was that the midterm be imposed on all counts, with the terms stayed as to two convictions, plus two indeterminate terms of 25 years to life. The term recommended was 14 years, four months of a determinate term, plus two 25–to–life indeterminate terms.
>
> At sentencing, defense counsel argued that Rosemond's lack of criminal history and his prior beating at the hands of members of the Marshall family constituted factors in mitigation and urged the trial court to impose "the least amount of punishment as possible." The prosecutor stated that Rosemond's having been "severely beaten" by members of the Marshall family was "somewhat of a mitigating factor."
>
> After mentioning the section 12022.53, subdivision (d) enhancement, the trial court stated it had "very little authority but to impose the sentence it's going to impose here." The trial court stated there were "substantial circumstances in mitigation," including Rosemond's lack of criminal history and the unprovoked attack on Rosemond by members of the Marshall family, but that circumstances in aggravation outweighed the mitigating factors.
>
> The trial court imposed the upper term, seven years, for the count 1 offense, shooting at an occupied motor vehicle. On counts 2 and 3, the trial court imposed the mitigated term, but stayed imposition of punishment pursuant to section 654. On the remaining counts, the trial court imposed the mitigated term, to run concurrently with the count 1 term. A single section 12022.53, subdivision (d) enhancement was imposed. The total

term imposed was seven years, plus one 25–year–to–life enhancement. A $30 court security fee and a $40 assessment fee were imposed for each count.

*Analysis*

"An erroneous understanding by the trial court of its discretionary power is not a true exercise of discretion. [Citation.] 'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.]' [Citation.] A court cannot exercise that 'informed discretion' where it is unaware of the scope of its discretionary powers. [Citation.]" (People v. Bruce G. (2002) 97 Cal.App.4th 1233, 1247–1248.)

The record here reflects that the trial court understood, and exercised, its discretionary sentencing powers. Its comment that it had "very little authority but to impose the sentence it's going to impose" was nothing more than a comment reflecting the trial court's assessment of the aggravating and mitigating factors and the circumstances of the offenses. Immediately after making that comment, the trial court proceeded to outline the aggravating and mitigating factors and its assessment of those factors. The trial court's comment was made after it had noted for the record that it had read the probation report, which urged a midterm, and after both counsel had made their comments on the content of the probation report, with defense counsel arguing for a lower term than recommended. During comments from counsel, reference was made to the trial court's discretion in sentencing.

The record in this case shows that the trial court understood its discretionary authority and it weighed all of the competing factors prior to imposing sentence. It imposed the upper term on count 1, concurrent terms on the assault counts, and one section 12022.53, subdivision (d) enhancement, all of which differed from the probation department's recommendation. In view of these facts and circumstances, Rosemond's argument fails.

We also disagree with Rosemond's claim that the trial court considered an inappropriate factor when imposing the upper term on count 1.

In every felony proceeding, a probation report must be prepared and must be read by the sentencing judge. (People v. Otto (2001) 26 Cal.4th 200, 213.) The trial court expressly stated it had read the probation report and asked for comments on the report. Facts bearing upon the offenses and defendant, Rosemond, were set forth in the probation report. The trial court is not bound to follow the recommendation of the probation department, but it is bound to consider all facts bearing upon the offenses and the defendant. (People v. Downey (2000) 82 Cal.App.4th 899, 910.)

The probation report did not list as an aggravating factor that there were two victims of the shooting and a total of six potential victims. A trial court, however, is not limited to the factors mentioned in the probation report. It may look to "the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing" in exercising its sentencing discretion to select the upper, mid, or lower term. (Cal. Rules of Court, rule 4.420(b).) It may use as a factor in aggravation: "The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed." (Id., rule 4.421(a)(7).)

Here, the jury found Rosemond guilty of six counts of assault with a firearm; each count alleged a different victim. The trial court used these assault counts as a basis for an aggravated term on count 1 (shooting at an occupied vehicle) and, instead of imposing consecutive terms for these counts as recommended in the probation report,

10

imposed concurrent terms on the assault counts.

The trial court's imposition of the upper term also comports with the requirements of Blakely v. Washington (2004) 542 U.S. 296 and Cunningham v. California (2007) 549 U.S. 270. The aggravating factor relied upon by the trial court was based upon facts found by the jury as reflected in the guilty verdicts on the assault charges. (People v. Myles (2012) 53 Cal.4th 1181, 1220–1221.)

There was no error by the trial court in sentencing Rosemond.

2. Analysis

Petitioner argues that the trial court's decision to impose the upper term on Count 1 was improper because the court relied upon facts not found by the jury. Likewise, Petitioner claims that the trial court erred in imposing the upper term due to its lack of understanding of its authority to impose a lesser standard.

As noted by the 5th DCA, here, the jury found Petitioner guilty of six counts of assault with a firearm as a result of his shooting at the vehicle in which the victims were passengers. Thus, the trial court was entitled to consider this information when determining Petitioner's sentence. That Petitioner wished ill only on one of the passengers did not exonerate him of shooting the second victim and it did not exonerate him of shooting at a vehicle with six people in it. Despite Petitioner's arguments to the contrary, the trial court's reliance upon these jury-determined facts to impose the upper term comports with Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) and the cases following it. Thus, there is no showing of constitutional error.

Moreover, the trial court was entitled under California law to exercise its discretion to determine whether to impose the lower, mid or upper term. California Penal Code § 1170(b) ["When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."] The 5th DCA reasonably determined that the trial judge's statement that it had "very little authority but to impose the sentence it's going to impose," was a recognition not of a lack of authority, but of the danger of Petitioner's action coupled with the jury's determination that he assaulted six people when he shot at the occupied car. Indeed, the trial court's analysis of the aggravating and mitigating factors supports this conclusion.

On the other hand, because there is no independent constitutional violation as demonstrated

above, "federal habeas review of a state court's application of its own sentencing laws is limited to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." See, e.g., Lewis v. Jeffers, 497 U.S. 764, 780 (1990). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Petitioner does not demonstrate that the trial court's decision to impose the upper term was fundamentally unfair. The state court considered the number of victims Petitioner shot, the number of victims at whom Petitioner shot and the inherent danger of shooting at a carload of people.  Trial judges are entitled to rely upon "those facts [they] deem[ ] important to the exercise of [their] sentencing discretion," Butler v. Curry, 528 F.3d 624, 643 (9th Cir. 2008) quoting Blakely v. Washington, 542 U.S. 296, 30. Thus, the upper term sentence did not amount to a fundamentally unfair sentence.

## **RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED** with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///
///
///
///
///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 24, 2015**                            **/s/ Jennifer L. Thurston**
                                                                                                     UNITED STATES MAGISTRATE JUDGE